IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RAMON GARCIA,<br><br>Defendant. | 4:13-CR-3130<br><br>TENTATIVE FINDINGS |

The Court has received the presentence investigation report (PSR) and addendum in this case. The defendant has objected to several aspects of the PSR and moved for a downward departure or variance. Filing 140. The defendant has requested a hearing to be held at sentencing.

IT IS ORDERED:

1. The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005), and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

    (a) give the advisory Guidelines such weight as they deserve within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

    (b) resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

    (c) impose upon the United States the burden of proof on all Guidelines enhancements;

    (d) impose upon the defendant the burden of proof on all Guidelines mitigators;

    (e)    depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

    (f)    in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2.    The defendant has objected to several aspects of the PSR and moved for a downward departure or variance. Filing 140. The Court will resolve the defendant's motion for departure or variance at sentencing. His objections require some further discussion.

First, the defendant disputes the probation officer's drug-quantity calculation. The probation officer found that the defendant should be held responsible for 34.5 kilograms of methamphetamine mixture, resulting in a base offense level of 38. PSR at ¶¶ 9–29, 37. The defendant has objected to this quantity determination and to the "'factual basis in the (PSR) relied upon to reach that determination . . . .'" PSR at p. 18. The defendant submits that a base offense level of 32 would be more appropriate.

It is the government's burden to prove drug quantity by a preponderance of the evidence. *United States v. Young*, 689 F.3d 941, 945 (8th Cir. 2012). And it is well settled that "[t]he PSR is not evidence. If the defendant objects to any of the factual allegations contained therein on an issue on which the government has the burden of proof . . . the government must present evidence at the sentencing hearing to prove the existence of the disputed facts." *United States v. Mann*, 701 F.3d 274, 310 (8th Cir. 2012). The government should therefore be prepared to present evidence as to the quantity of drugs attributable to the defendant. The Court will resolve this objection at sentencing.

The defendant next objects to the three-level enhancement for acting in a managerial or supervisory role, pursuant to U.S.S.G. § 3B1.1(b). *See* PSR at ¶¶ 31, 40 & pp. 19–20. As with the previous objection, the defendant objects generally to the factual basis for the enhancement. *See*, filing 140 at 2; PSR at p. 19. Again, the government should be

prepared to present evidence at sentencing, and the Court will resolve the objection at that time.

Finally, the defendant has objected to the proposed two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the manufacture or distribution of drugs. *See*, filing 140 at 2; PSR at ¶¶ 19, 30, 38 & p. 19. This objection may rest upon a firmer foundation than the defendant's previous objections.

Section 2D1.1(b)(12) is an enhancement of recent vintage, and first appeared in the November 2011 Guidelines Manual. *See*, Pub. L. No. 111–220, § 6(2), 124 Stat. 2372, 2373 (2010); *United States v. Miller*, 698 F.3d 699, 705 (8th Cir. 2012). The guideline provides for a two-level increase where "the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). This includes using the premises to store controlled substances for the purpose of distribution. § 2D1.1 cmt. n.17.

Among the factors a court considers in determining whether a defendant "maintained" premises for drug distribution are: whether he or she owned or rented the premises and the extent to which he or she controlled access to, or activities at, the premises. § 2D1.1, cmt. n.17; *see also Miller*, 698 F.3d at 706. The comments to § 2D1.1 further provide:

> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

§ 2D1.1 cmt. n.17. Thus, there are two major prongs to the enhancement: (1) control of the premises, and (2) use of the premises for the purpose of manufacturing or distributing controlled substances.

The premises at issue here is the "J Street" apartment in Lincoln, Nebraska. PSR at ¶ 19. On June 23 and 24, 2013,[1] a maroon car associated with the underlying drug conspiracy was seen to enter the apartment's garage. PSR at ¶¶ 18–21. Then, according to the PSR:

> [f]or over two hours on June 24, 2013, people were seen in the vicinity of the garage. Although the investigators' view was obstructed so they were unable to see whether anyone entered the garage, they believe they were entering it. The vehicle was then driven out of the garage. These circumstances lead one to believe that drugs were being taken from a hidden compartment in the maroon Infiniti.

PSR ¶ 19.

At some point thereafter (it is not clear when), law enforcement officers executed a search warrant at the J Street apartment. They found a total of 70.6 grams of methamphetamine mixture and a very small amount of marijuana. While there, officers spoke to Garcia's sister-in-law. She stated she had been living there for about 2 weeks. She explained this arrangement had been initiated by Garcia and his wife (her sister), and that she had not paid either a deposit or rent on the property. PSR at ¶ 30.

Assuming the truth of the facts as stated in the PSR, there is sufficient evidence to find that Garcia controlled the J Street apartment (at least for the period surrounding the search warrant). The lease for the apartment is not before the Court. But Garcia exercised enough control over the apartment to arrange for his sister-in-law to live there. Absent any further evidence to the contrary, the Court tentatively finds that the evidence supports the first prong of the premises enhancement— that Garcia controlled the apartment. However, the same cannot be said for the second "use" or "purpose" prong of § 2D1.1(b)(12).

In evaluating the second half of the premises enhancement, courts look to the factors suggested in the comments to the guideline, including the frequency with which the premises was used for drug-related activities, whether those activities were substantial or significant, and whether

---

[1] The Court understands this to refer to one occasion spanning both days.

there was any other legitimate use for the premises. *See, e.g.*, *Miller*, 698 F.3d at 705–07; *see also*, *United States v. Johnson*, 737 F.3d 444, 448–49 (6th Cir. 2013); *United States v. Flores-Olague*, 717 F.3d 526, 532–33 (7th Cir. 2013). The premises enhancement was modeled after 21 U.S.C. § 856, known colloquially as the "'crack-house statute.'" *Flores-Olague*, 717 at 531.[2] So, courts evaluating § 2D1.1(b)(12) also look to cases interpreting § 856. *See, e.g.*, *Flores-Olague*, 717 at 531; *Miller*, 698 F.3d at 706–07. As it stands, the record contains insufficient evidence as to both the frequency and significance of any drug operations occurring at the J Street apartment.

Section 2D1.1(b)(12) clearly applies where defendants have used premises for drug operations over an extended period of time. *See, e.g.*, *Flores-Olague*, 717 at 530 (defendant used house to store and sell drugs for 3 years); *Miller*, 698 F.3d at 706 (6 years, plus four controlled buys at the house); *cf. United States v. Rhodes*, 730 F.3d 727 (8th Cir. 2013) (conviction under § 856 upheld where defendant "regularly" used apartment to store, weigh, and package drugs over period of several months). And the enhancement has been applied where, although there were fewer transactions, the premises was used to store major quantities of drugs for several months. *See Johnson*, 737 F.3d at 448. By contrast, the enhancement was not applied in *United States v. Ortiz*, 807 F. Supp. 2d 746 (N.D. Ill. 2011), where the defendant used a house to receive only a single drug shipment.

This case more closely resembles *Ortiz* than any of the cases where the enhancement was found to apply. The PSR states only that on one occasion in June 2013, law enforcement officers observed circumstances that would support an inference that drugs were being unloaded in the apartment's garage. Then, on some later date, about 70 grams of methamphetamine mixture was found at the apartment. Given the large quantity of drugs involved in this case—34.5 kilograms, according to the PSR—70 grams is hardly evidence that drug distribution was a primary use of the J Street apartment.

The Seventh Circuit has held that, under both § 856 and § 2D1.1(b)(12), an individual "'maintains' a drug house if he owns or rents

---

[2] Section 856(a)(1) makes it unlawful to " knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance."

premises, . . . and <u>for a sustained period of time</u>, uses those premises to manufacture, store, or sell drugs." *Flores-Olague,* 717 F.3d at 532 (emphasis supplied). The evidence here—two isolated incidents, neither of which involved Garcia personally, and only one of which yielded actual evidence of drugs—does not show a "sustained" use of the premises for the storage or distribution of drugs.

Additionally, the search of the J Street apartment did not uncover any other indicia of drug activities, such as large amounts of currency or "tools of the trade" like guns, paraphernalia, or packing or weighing materials. *See Flores-Olague,* 717 F.3d at 533. Instead, investigators discovered 4 pounds of methamphetamine and large amounts of cash in several *other* apartments. PSR ¶¶ 22, 30. The lack of a comparable discovery at the J Street apartment weighs against application of the premises enhancement.

Thus, the Court tentatively finds that—as the record stands—an enhancement under § 2D1.1(b)(12) is not warranted. Of course, that finding could potentially change if the government presents additional, or more persuasive, evidence at the sentencing hearing.

3. Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraph, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

4. If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5. Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6. Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 29th day of January, 2014.

BY THE COURT:

*John M. Gerrard*

John M. Gerrard
United States District Judge